Edward GODBY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 69A01–1009–CR–504.

Court of Appeals of Indiana.

May 31, 2011.

Transfer Denied Aug. 18, 2011.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Edward Godby was convicted of a number of methamphetamine-related offenses based in part on items police found in a locked box in his garage. Godby's wife consented to a search of the garage after the police gave her false information about why they wanted to search. Godby asserts her consent was therefore invalid and, even if his wife could consent to a search of the garage, she could not consent to a search of his locked box.

We reverse and remand.[1]

---

1. As we reverse and remand for a new trial, we need not address Godby's argument he was subjected to double jeopardy because all the charged offenses were part of the same illegal course of action.

## FACTS AND PROCEDURAL HISTORY[2]

In November 2007, Jeremy Franklin, a State Police trooper who routinely checked pharmacy logs for purchases of pseudoephedrine, noticed Godby bought two boxes of Sudafed over a three-day period.[3] Based on that information, he suspected Godby was making methamphetamine. He and another trooper went to Godby's home.[4] They did not have a warrant, but instead hoped to obtain permission to search. Godby was not home, but his wife Lois was.

Trooper Franklin told Lois the police had received an anonymous tip that there was a methamphetamine lab at the Godby residence. That was not true, but Trooper Franklin "didn't want to tell her about our investigative techniques of, hey, we check these Sudafed logs.... So what I did, I told her, hey, we got an anonymous tip about a meth lab being here. I lied to her." (Tr. at 222.) He also told Lois meth labs are dangerous, and then she signed the consent to search.

The troopers searched the garage, where they saw "things that concerned" them. (*Id.* at 224.) Those things included pop bottles with layered liquid, an electric hot plate, a bottle of hydrogen peroxide, a hydrochloric acid generator, and a glass

---

2. We heard oral argument April 4, 2011, at the University of Southern Indiana in Evansville. We thank the University for its hospitality and commend counsel on the quality of their advocacy.

3. The two boxes contained sixty-eight pills with a total of 5.28 grams of pseudoephedrine. The State characterizes this as "an excessive quantity" of Sudafed. (Br. of Appellee at 16.) Sudafed is manufactured in various dosages, which can be taken at intervals of 6, 12, or 24 hours. Dosage of one variety is two pills every four to six hours. At 8 pills a day, 68 pills is less than a two-week supply for one person. *See* http://www.sudafed.com/products/adult/sinus-congestion/sudafed-congestion# Directions (last visited March 28, 2011). The record does not reflect which variety of Sudafed Godby bought. Nor does the State offer any other basis for its characterization of that amount as "excessive."

The amount Godby purchased did violate Ind.Code § 35–48–4–14.7 (2007), which at the time of Godby's purchases provided "A person may not purchase drugs containing more than three (3) grams of ephedrine or pseudoephedrine, or both in one (1) week." The State did not charge Godby with a violation of that statute. That section has since been amended numerous times. The current statute provides in relevant part "A person may not purchase drugs containing more than three and six-tenths (3.6) grams of ephedrine or pseudoephedrine, or both, on one (1) day, or more than nine (9) grams of ephedrine or

pseudoephedrine, or both, in a thirty (30) day period," so Godby's purchase apparently would not now be a violation. The most recent amendment, effective July 1, 2011, provides in relevant part: "A person may not purchase drugs containing more than three and six-tenths (3.6) grams of ephedrine or pseudoephedrine, or both, on one (1) day, or more than seven and two-tenths (7.2) grams of ephedrine or pseudoephedrine, or both, in a thirty (30) day period. These limits apply to the total amount of base ephedrine and pseudoephedrine contained in the products and not to the overall weight of the products." P.L. 221–2011.

4. The record does not reflect how much time elapsed between the Trooper's check of the purchase records and the visit to Godby's home. We therefore cannot know whether the Trooper would have had time to obtain a warrant, assuming *arguendo* the purchase of two boxes of cold medicine, without more, would be probable cause for the issuance of a warrant. Godby says the Trooper "reviewed the Sudafed purchase records on October 17 and October 19," (Br. of Appellant Edward Godby (hereinafter "Godby Br.") at 12), but did not search the house until November 12. In fact, the Trooper testified the records showed Godby *made the purchases* on those dates in October, not that those were the dates when the Trooper checked the records. The State does not, however, assert an emergency need to search precluded the Troopers from obtaining a warrant.

baking dish with white residue in it.[5] The troopers also found a locked wooden box. To obtain access to the contents of the box, they removed the hinges. During direct examination, Trooper Franklin testified he did not recall whether he asked Lois for a key to the box, but on cross-examination he acknowledged his prior testimony, apparently at a suppression hearing, that he did ask her and she did not have a key to the box. Regardless, Trooper Franklin believed Lois gave them permission to "get in the box."[6] (*Id.* at 235.) The box contained several items associated with the manufacture of methamphetamine.[7]

After a jury trial, the court entered convictions of four counts: manufacturing methamphetamine, a Class B felony;[8] possession of precursors with intent to manufacture, a Class D felony;[9] possession of methamphetamine, a Class D felony;[10] and possession of paraphernalia, a Class D felony.[11]

## DISCUSSION AND DECISION

Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Jackson v. State*, 785 N.E.2d 615, 618 (Ind.Ct.App.2003), *trans. denied.* We determine whether substantial evidence of probative value exists to support the denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. *Id.* But the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind.2008).

### 1. *Validity of Consent to Search the Home*

Godby argues Lois' consent to the search of the home was not voluntary because the troopers obtained her consent by lying about the reason for their visit and by telling Lois methamphetamine labs are

---

5. The State asserts in its Statement of the Facts that Trooper Franklin "believed the white residue to be pseudoephedrine; *subsequent lab tests indicated that he was correct.*" (Br. of Appellee at 4) (emphasis added).

The pages of the record to which the State directs us do not support its statement that "subsequent lab tests" indicated the content of the residue—there is not even a reference to "lab tests" on those pages. Trooper Franklin did testify "In my opinion, I, I was like I believe this to be Sudafed." (Tr. at 234.) Our independent review of the record reveals two certificates of analysis from the State Police lab, but neither indicates the presence of pseudoephedrine.

Earlier in Trooper Franklin's direct examination, he stated he "tested that [residue], field tested it positive for pseudoephedrine." (*Id.* at 226.) Godby objected and the trial court sustained the objection, agreeing to strike the testimony "at this time." (*Id.*) The court then recessed. The State does not direct us to anything in the record indicating the trial court subsequently changed its ruling on that objection. We admonish the State to refrain from such mischaracterizations of the trial record.

6. The consent form Lois had previously signed reflected her consent to a search of the "residence and outbuildings." Neither party directs us to any written consent Lois executed for a search of the locked box specifically.

7. The box also contained pornographic magazines and two empty bottles of Viagra prescribed to Godby.

8. Ind.Code § 35–48–4–1.1.

9. Ind.Code § 35–48–4–14.5.

10. Ind.Code § 35–48–4–6.1.

11. Ind.Code § 35–48–4–8.3.

very dangerous, which statements amounted to "coercion to get Godby's wife to allow the search." (Godby Br. at 9.) Godby has waived this claim because he did not challenge at trial the validity of Lois' initial consent,[12] nor did he object to the admission of the items found outside of the locked box. He objected only to admission of the evidence found in the box and only on the basis Lois did not have authority to consent to the search of that box.

■ Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. *Konopasek v. State*, 946 N.E.2d 23 (Ind.2011). Godby does not argue on appeal the admission of the evidence found outside the locked box was fundamental error. We accordingly decline to address that allegation of error.

### 2. The Search of the Locked Box

### A. Fourth Amendment

■ The Fourth Amendment protects against unreasonable search and seizure and requires a warrant before a search is conducted. *Jackson*, 785 N.E.2d at 618. If a search is conducted without a warrant, the State bears the burden of proving an exception to the warrant requirement. *Id.* Here, the exception is consent, but the State did not demonstrate Lois had authority to consent to a search of Godby's locked box.

■ The consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person who shares the authority. *Overstreet v. State*, 783 N.E.2d 1140, 1159 (Ind.2003). A party may consent to a search of another's premises or property if there is actual authority to do so. *Lee v. State*, 849 N.E.2d 602, 606–07 (Ind.2006). Nevertheless, persons sharing premises may retain areas or objects within their exclusive control that are not subject to search based on consent of one of the co-occupants. *Id.* at 607. Establishing actual authority requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. *Krise v. State*, 746 N.E.2d 957, 967 (Ind. 2001).

If there is no actual authority, then a search is lawful only if the facts demonstrate the consenting party had apparent authority to consent. *Id.* To demonstrate apparent authority, the State must prove the facts available to the police at the time of the search would warrant a person of reasonable caution to believe that the consenting party had authority over the premises. *Id.*

As Godby's spouse and a joint owner of the home, Lois had actual authority to

---

12. We acknowledge Godby's argument the consent issue was raised at a motion to suppress hearing. Godby's counsel told the jury in opening argument that Lois' consent would be an issue. At trial Godby "complained about Lois's consent to the search and elicited testimony that she did not understand she had the right to refuse." (Reply Br. of Appellant Edward Godby (hereinafter "Godby Reply Br.") at 3.) He and the State questioned Trooper Franklin at length about the events leading to Lois' consent, including the trooper's misrepresentation about the reason for the search. However, Godby did not object to the admission of the evidence collected from areas outside the locked box. A motion to suppress does not preserve an argument for appeal; rather, the evidence must be objected to when presented at trial. *See Dawson v. State*, 786 N.E.2d 742, 744 (Ind.Ct.App. 2003) (in order for this court to review the denial of a motion to suppress, the error must be preserved by a specific and timely objection to the evidence at trial. The denial of a motion to suppress in and of itself is insufficient to preserve error for appeal), *trans. denied.*

consent to a general search of the home. But she did not have authority, actual or apparent, to consent to a search of Godby's locked box.

In *Krise,* a man and woman jointly occupied a house and the man consented to a search of the premises for drugs. Troopers found a woman's purse in the bathroom, searched it, and found drugs. The *Krise* Court noted that because the man and woman shared the home, the man could consent to search of the common areas of the house, including the bathroom. *Id.* at 967. But the man could not consent to the search of the purse because "inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself." *Id.* at 969.

Godby's locked wooden box in the garage, like the purse in *Krise,* fits in the category of "closed containers that normally hold highly personal items." *See id.* Godby placed the box in an area of the home Lois seldom entered, he locked it, and Lois did not have a key. The State did not show Lois had access to the box or had Godby's permission to access the box; thus the State did not demonstrate she had actual authority over the box. Nor did the State demonstrate a person of reasonable caution would believe Lois had apparent authority over the box, as she could not produce a key.

Moreover, the contents of the box suggest Godby expected privacy—they included pornography and an empty Viagra bottle, "items that a man might wish to hide from his wife." (Godby Br. at 21.) The State argues Godby did not have a reasonable expectation of privacy in the box because he "did little else to protect his privacy interest" other than locking it. (Br. of Appellee at 12.)[13] We are left to wonder what more one can do to demonstrate he wishes to protect a privacy interest in items if, as the State contends, putting the items in a container, locking it, and retaining the key to the locked container is not enough. The State did not demonstrate a person of reasonable caution would believe Lois had apparent authority to consent to the police search of the locked box and that evidence should have been excluded.

### B. *Article I Section 11*

■■ Search and seizure violations under Article I, Section 11 of the Indiana Constitution are analyzed differently, *Jackson,* 785 N.E.2d at 618, but the search of the locked box was a violation under that standard as well. The State must show that, under the totality of the circumstances, the police behavior was reasonable. *Id.* While there may well be other relevant considerations under the circumstances, reasonableness of a search or seizure is determined by balancing (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Litchfield v. State,* 824 N.E.2d 356, 359–60 (Ind.2005).

We cannot find the search of the locked box "reasonable" based on the "degree of concern, suspicion, or knowledge that a violation has occurred." Police went to Godby's home because he had bought sixty-eight Sudafed pills. As explained

---

**13.** The State argues Lois was "unaware of any special interest [Godby] had in the box," (Br. of Appellee at 12), but offers no authority or explanation to support its apparent premise that Godby's privacy interest could be determined by whether *Lois* was aware he had one.

above, that number of pills might have amounted to less than a two-week supply for one person, and the record does not support the State's characterization of the amount as "excessive." (Br. of Appellee at 16.) We agree with Godby that the degree of intrusion was great; police removed the hinges on a locked box to gain access to it because Lois did not have a key. That Lois had no key "should have been a clear indicator that the box was not her personal belonging and she could not consent to its search." (Godby Br. at 25.)

Apparently addressing the "the extent of law enforcement needs" factor, the State notes police saw in the garage items that could be used in the manufacture of methamphetamine, including pop bottles with layered liquid, an electric hot plate, a bottle of hydrogen peroxide, a hydrochloric acid generator, and a glass baking dish with white residue. While this might have provided the police with additional *motivation* to search the box, the record does not reflect any "law enforcement need" to immediately dismantle and search the locked box rather than request a search warrant. The State did not show the warrantless search of Godby's locked box was reasonable under Article I, Section 11 of the Indiana Constitution.

As the warrantless search of the locked box was impermissible under the Indiana and United States constitutions, and as it is not possible to determine which of Godby's convictions, if any, could be supported without the evidence so obtained, we must reverse Godby's convictions and remand for a new trial.

Reversed and remanded.

BAILEY, J., and BROWN, J., concur.