Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**KIRK S. FREEMAN**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SAMUEL BRADBURY,          ) | |
|          ) | |
|    Appellant-Defendant,    ) | |
|          ) | |
|     vs.         ) | No. 79A02-1210-CR-828 |
|          ) | |
| STATE OF INDIANA,      ) | |
|          ) | |
|    Appellee-Plaintiff.     ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Gregory J. Donat, Judge
Cause No. 79D04-1111-FD-256

**June 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

In this interlocutory appeal, Samuel Bradbury appeals the trial court's denial of his motion to suppress. We affirm.

**Issue**

Bradbury raises one issue, which we restate as whether the trial court properly denied his motion to suppress regarding marijuana found during a patdown search.

**Facts**

On October 3, 2011, Officer Jonathan Lendermon of the Tippecanoe County Sheriff's Department was speaking to Andy Wall about illegal drug use, and Wall's phone kept beeping, indicating that he was receiving text messages or voice mails. Wall gave Officer Lendermon consent to look at his phone, and Officer Lendermon saw text messages from Bradbury about Wall buying marijuana from Bradbury.

Officer Lendermon asked Sergeant Leonard Halascsak to go to Bradbury's residence while Officer Lendermon finished his conversation with Wall and contacted the deputy prosecutor for a search warrant of Bradbury's residence. Sergeant Halascsak and Deputy Chris Black went to Bradbury's residence. Deputy Black approached the back door while Sergeant Halascsak approached the front door. When Sergeant Halascsak approached the front door, he walked past a window and could see a "hookah" in the living room. Tr. p. 26. He either rang the doorbell or knocked on the door. Sergeant Halascsak saw a woman, later identified as Monica Brietz, walk down the hall and look at him, but then she walked past the front door, went upstairs, and walked into a room. Soon, Bradbury walked out of the same room, came downstairs, and answered the door.

2

Sergeant Halascsak told Bradbury that he was investigating possession of marijuana and asked if he could come into the house. Bradbury acknowledged his identity and refused to let Sergeant Halascsak into the house, but he stepped onto the porch. Sergeant Halascsak saw that Bradbury had two bulges in his pockets. Because he was concerned about the bulges, Sergeant Halascsak placed Bradbury in handcuffs, informed Bradbury that he was not under arrest, and told Bradbury that he was going to search him for officer safety reasons. Sergeant Halascsak then yelled for anyone else in the house to come outside, and Brietz came back downstairs. While Sergeant Halascsak talked to Brietz, he instructed Deputy Black to do a patdown search of Bradbury. Deputy Black also saw an egg-sized bulge in Bradbury's pocket. Deputy Black asked Bradbury if he "had anything on him." Id. at 39. Bradbury responded that he had marijuana in his pocket. Deputy Black then retrieved a baggie of marijuana from Bradbury's pocket.

The State ultimately charged Bradbury with Class D felony maintaining a common nuisance, Class D felony dealing in marijuana, and Class D felony possession of marijuana. Bradbury filed a motion to suppress, arguing that the patdown search was improper under the United States Constitution's Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. According to Bradbury, the officers had no reasonable suspicion that he was armed and dangerous and "any consent obtained was rendered involuntary." Appellant's App. p. 32. After a hearing, the trial court denied Bradbury's motion to dismiss. The trial court found:

> Sgt. Halascsak testified to more than sufficient indicia to justify Terry pat-downs of Bradbury and [Brietz]. The Court notes that the case in point is not a simple traffic stop

3

where there was no indication of other criminal activity, and less reason to infer danger to the officers. Instead this was a case involving officers responding to a drug dealing situation in a dwelling, with multiple defendants whose intent could not be readily ascertained.

Sgt. Halascsak believed that he was in a dealing situation, and testified that based on his experience guns or weapons are often present at dealing situations. Furthermore, he provided additional factors about the situation:

1.    officers had not known there was more than one person present in the house, and could not be sure there were not others;

2.    [Brietz] had seen the officers, but rather than answer the door had gone up the stairs;

3.    [Brietz] might have gone to warn others, or perhaps had retrieved a weapon from the upstairs room.

Furthermore, in Bradbury's case a Terry pat-down was *not* actually performed. Rather the officer seized contraband which the defendant stated he had on his person. However, evidence at hearing clearly indicates that had Dep. Black conducted the pat-down as directed by Sgt. Halascsak, he would have felt the marijuana in the defendant's pocket, would have recognized it as contraband, and could have removed it under the plain feel doctrine.

Id. at 45. The trial court also found that the marijuana in Bradbury's pocket would have been discovered regardless of the patdown search because, after the house was searched pursuant to the search warrant, the officers found "substantial evidence of dealing" and Bradbury would have been searched incident to his arrest. Id. at 46. Finally, the trial court also concluded that "even assuming the warrant was defective because it alluded to evidence seized contrary to law, the Court notes that the officers had a good faith basis to conduct their search pursuant to the warrant, and that the evidence seized in the house is

4

admissible under I.C. 35-37-4-5." Id. at 47. The trial court granted Bradbury's request for certification for interlocutory appeal, and we accepted jurisdiction over the interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

**Analysis**

Bradbury argues that the patdown search violated the Fourth Amendment to the United States Constitution.[1] Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. Jackson v. State, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), trans. denied. We determine whether substantial evidence of probative value exists to support the denial of the motion. Id. We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. Id. However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. Id. We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. Patterson v. State, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). "Searches performed by government officials without warrants are per

---

[1] Bradbury also argues that the search violated Article 1, Section 11 of the Indiana Constitution. However, because Bradbury has failed to provide us with an analysis of his Indiana constitutional claim separate from the federal analysis, he has waived any claim of error. Francis v. State, 764 N.E.2d 641, 647 (Ind. Ct. App. 2002).

se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). A search without a warrant requires the State to prove an exception to the warrant requirement applicable at the time of the search. Id.

One exception was established in Terry v. Ohio, in which "the United States Supreme Court held that a police officer may briefly detain a person for investigatory purposes if, based on specific and articulable facts together with reasonable inferences drawn therefrom, an ordinarily prudent person would reasonably suspect that criminal activity was afoot." Patterson, 958 N.E.2d at 482 (citing Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). Reasonable suspicion is determined on a case-by-case basis by examining the totality of the circumstances. Id.

"In addition to detainment, Terry permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes that the individual is armed and dangerous." Id. at 482-83. "An officer's authority to perform such a pat-down search of a detained individual during a Terry stop is dependent upon the nature and extent of the officer's particularized concern for his or her safety." Id. at 483 (citing Rybolt v. State, 770 N.E.2d 935, 938 (Ind. Ct. App. 2002), trans. denied). The officer only needs reasonable suspicion that the individual is armed to justify a limited patdown search of the individual's outer clothing. Id. at 485. "[T]here must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous." Id. at 486. "In determining whether an officer acted

6

reasonably under the circumstances, we consider the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his or her experience." Id.

Bradbury argues that the patdown was improper because he did not make any furtive movements or cause the officers to be in fear for their safety. However, the State presented evidence that, while officers were investigating Wall for possession of drugs, they learned that Bradbury was arranging to sell drugs to Wall. When officers arrived at Bradbury's residence and walked past the living room window, they saw a "hookah." Tr. p. 26. They knocked on the door, but Brietz walked past the front door and went upstairs into a room. A few minutes later, Bradbury emerged from the same room and answered the door. When he opened the door, Bradbury had discernible bulges in his pockets.

We conclude that the officers had reasonable suspicion to believe that Bradbury was armed and dangerous. The officers were aware that Bradbury was preparing to engage in a drug transaction, they saw drug paraphernalia in the living room, Brietz was acting suspiciously, Bradbury had bulges in his pockets, and the officers knew that drug dealers often carry weapons. A reasonably prudent person in these circumstances would be warranted in believing that his or her safety or that of others was in danger. Thus, the patdown search was reasonable, and Bradbury's Fourth Amendment rights were not violated.[2]  See, e.g., Washington v. State, 784 N.E.2d 584, 588 (Ind. Ct. App. 2003)

---

[2] The State also argues that the search was proper based on State v. Washington, 898 N.E.2d 1200 (Ind. 2008). In Washington, an officer asked a driver during a traffic stop regarding whether "he had any guns, drugs, or anything that may harm [him] on his person," and the driver responded that he had "a couple dime bags on him." Washington, 898 N.E.2d at 1203. Our supreme court held:

> The officer's brief questioning as to whether the defendant had any
> weapons, drugs, or anything else that could harm the officer was not

(holding that a patdown search was warranted where the defendant made an unusually "wide movement back towards his hip" when retrieving his driver's license and he had a bulge on his back hip).

### Conclusion

The trial court properly denied Bradbury's motion to suppress. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

---

itself a search or seizure and thus was not prohibited by the Fourth Amendment. The defendant was not obligated to answer the questions, and his choice to do so and to disclose inculpatory information provided the basis for the officer's further request for permission to search the defendant's trouser pockets.

Id. at 1205. We need not address the State's argument because we conclude that the patdown search was proper.