OPINION
MAY, Judge.
[1] Thomas Pinner appeals the denial of his motion to suppress. As no reasonable suspicion justified the investigatory stop, we reverse.
Facts and Procedural History
[2] On February 20, 2015, Indianapolis Metropolitan Police Department officers Jason Palmer and George Stewart responded to a call from a cab driver regarding a passenger who dropped a handgun when exiting the cab at the Studio Movie Grill. The cab driver described the passenger as “a black male wearing a blue jacket [accompanied by] a black female with blonde hair.” (App. at 13.) The driver indicated he was fearful of being robbed. Officer Palmer talked to the cab driver on the phone before attempting to locate the man. The driver left the scene before the officers arrived and gave no indication that a robbery had been attempted.
[3] On entering the Studio Movie Grill, the officers saw a blonde-haired black woman walking away from Pinner, who matched the driver’s description. Pinner was on a bench by himself inside the lobby of the theatre when the two officers walked up to him, stood in front of him, told him there was a report of a man with a gun, and asked if he had a gun on him. Pinner denied having a gun but was shuffling nervously and was hesitant to answer. Officer Palmer had Pinner stand. When Pinner stood up, Officer Palmer could see the butt of a gun in his front pocket. Officer Palmer secured the gun for police safety and detained Pinner. He learned Pinner did not have a license to carry a handgun and placed him under arrest.
[4] The State charged Pinner with Class A misdemeanor carrying a handgun without a license enhanced to Level 5 felony due to prior commission of a felony.[1] Pinner filed a motion to suppress the evidence. The trial court held a hearing and then denied Pinner’s motion. The trial court found, in accordance with the State’s argument at the hearing, that the officers had reasonable suspicion to approach and question Pinner. Pinner filed a Petition to Certify an Order for Interlocutory Appeal, which the trial court granted. We accepted jurisdiction and now reverse.
Discussion and Decision
[5] Our standard of review for the denial of a motion to suppress evidence *277 is similar to that of other sufficiency issues. Jackson v. State, 785 N.E.2d 615, 618 (Ind.Ct.App.2003), reh’g denied, trans. denied. We determine whether there is substantial evidence of probative value to support denial of the motion. Id. We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court’s ruling. Id. But the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. Id. We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court’s determination of the facts, which will not be overturned unless clearly erroneous. Campos v. State, 885 N.E.2d 590, 596 (Ind.2008).
[6] The Fourth Amendment to the United States Constitution requires law enforcement officials to obtain a valid warrant before conducting searches or seizures. When police conduct a search without a warrant, the State has the burden of proving that the search falls yvithin an exception to the warrant requirement. Taylor v. State, 842 N.E.2d 327, 330 (Ind.2006). A police officer may briefly detain a person without a warrant if, based on articulable facts and reasonable inferences, the officer believes criminal activity “may be afoot.” Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[7] The interaction between Pinner and the officers was an investigatory stop for which the officers did not have reasonable suspicion Pinner had engaged in or was about to engage in criminal activity. Therefore, the Fourth Amendment required the gun be suppressed.[2]

Consensual Interaction or Investigatory Stop?

[8] Before, the trial court, the State conceded “[t]his case involves an investigatory stop,” (App. at 39), and argued the officers had the reasonable suspicion required by Terry to approach Pinner. But on appeal, the State argues the.officers’ interaction with Pinner was consensual, and thus not subject to Fourth Amendment protections, until they saw the gun. This encounter was not consensual and Pinner was subjected to an investigatory stop.
[9] An encounter between an officer and a private citizen is consensual when the officer limits his approach to “a casual and brief inquiry and the individual remains free to leave.” Woodson v. State, 960 N.E.2d 224, 227 (Ind.Ct.App.2012). The test for whether an individual remains free to leave is “what a reasonable person, innocent of any crime, would have thought had he been in the citizens’ shoes.” Crabtree v. State, 762 N.E.2d 241, 245 (Ind.Ct.App.2002).
[10] Here, two armed and uniformed officers approached and questioned Pinner, who was sitting alone in a theatre lobby.[3] They did not make small talk or pass the time- of day with him.-- The officers approached Pinner with an official purpose *278 and asked questions for which the answers could have criminal implications. See United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (examples of circumstances that indicate a seizure include the “the use of language or tone of voice indicating that compliance With the officer’s request might be compelled”). The two officers stood in front of Pinner—one to his right and one to his left—as he sat on a bench.[4] Though the officers asserted before the trial court that Pinner could have walked away, we do 'not believe any reasonable citizen would have felt free to disengage from the officers without answering their question. See State v. Felker, 819 N.E.2d 870, 875 (Ind.Ct.App.2004) (Although not every interaction between police and citizens implicates the Fourth Amendment, when an “officer has, by’means of physical force or show of authority, in some way restrained the liberty of a citizen,” a seizure occurs. The reviewing court must take into consideration all the circumstances that surround the encounter.), trans. denied. The interaction was not consensual; it was an investigatory stop, commonly referred to as a Terry stop.

Reasonable Suspicion for Terry Stop?

[11] The trial court denied Pin-ner’s Motion to Suppress Evidence on the ground there was reasonable suspicion to stop Pinner. Specifically, the trial court described the stop as a Terry stop throughout the Order and found “the initial detention amounted] to reasonable suspicion and therefore was reasonable.” (App. at 45.)
[12] On appeal, the State does not address reasonable suspicion. The State had the burden to demonstrate the interaction with Pinner was supported by reasonable suspicion and was a valid “exception to the general warrant requirement of the Fourth Amendment[.]” Segar v. State, 937 N.E.2d 917, 921 (Ind.Ct.App.2010). As the State provides no argument, it has not met that burden on appeal.
[13] Mere possession of a firearm, which is legal, cannot pro.duce reasonable suspicion to justify a Terry stop. See Marlone v. State, 882 N.E.2d 784 (Ind.Ct.App.2008) (evidence suppressed because possession of a handgun on a porch did not give officers sufficient evidence of criminal activity to justify stop), reh’g denied... The State has not directed us to a reason why the police believed when they stopped Pin-ner that his possession of the gun was illegal, nor has the State asserted any other criminal activity was “afoot.” Accordingly, we are constrained to hold the stop of Pinner was not supported by reasonable suspicion. See, e.g., id.
Conclusion
[14] As the officers did not have reasonable suspicion to stop Pinner and this was not a consensual encounter, the trial court abused its discretion when it denied his motion to suppress. As such, we reverse.
[15] Reversed.
BAKER, J., concurs.
BROWN, J., dissents with separate opinion.

. Ind.Code§ 35-47-2-1 (2014).

. Pinner also asserts the seizure was contrary to Ind. Const. Art. 1, Section 11. However, as the seizure violated the Fourth Amendment, we need not address Pinner’s other argument.

. This is one fact that distinguishes the facts herein from those in U.S. v. Scott, 2015 WL 4506864 (S.D.Miss. July 24, 2015), aff’d, 624 Fed.Appx. 850 (5th Cir.2015), cert. denied, — U.S. —, 136 S.Ct. 869, 193 L.Ed.2d 767 (2016), on which the dissent relies. Scott was "standing áround a car in a manner consistent with drug activity" in a high-crime area, (¶ 17 of Dissent), while Pinner was seated alone, presumably waiting for his female companion to return, and not acting in any manner consistent with illegal activity.

. This is the second fact that distinguishes Pinner’s situation from Scott. Scott had room to walk away, see Scott, 2015 WL 4506864, at *1, but Pinner could exit the encounter with police only by standing and walking between the two officers who had already asked him a pointed question.