

FILED

Jan 15 2019, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Cook
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randall Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | January 15, 2019 <br><br> Court of Appeals Case No. 18A-CR-1 <br><br> Appeal from the Brown Circuit Court <br><br> The Honorable Judith Stewart, Judge <br><br> Trial Court Cause No. 07C01-1604-F2-195 |

**May, Judge.**

Randall Brown brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence. Brown asserts one issue for our review, which we restate as whether the trial court erred when it denied his motion to suppress. We affirm and remand for further proceedings.

# Facts and Procedural History

On April 27, 2016, officers executed a search warrant at Brown's residence. The search warrant stated the location of the residence and authorized officers to

> search diligently, including all buildings, structures, vehicles, fenced-in areas, and any other enclosed area and/or closed container anywhere on the premises contained within in [sic] the curtilage of the described dwelling, for:
>
> Methamphetamine and any accompanying paraphernalia for using, ingesting or distributing methamphetamine; including but not limited to scales, pipes, packaging, and any indicia of using, possessing or dealing methamphetamine. Any US Currency that could be evidence of dealing methamphetamine including but not limited to five 100 dollar bills (serial numbers: LG74276189A, LF33086918C, LB73724153E, LD6621758SB, LD75008873B), twelve 20 dollar bills (serial numbers: JG69509816C, JG94949093B, GF02746549D, JL 68328040A, JK49558930B, MB33277468B, ML78678538H, EG72016894D, IK22554653A, JG55481073D, EA45478846F, JB34890837G), and two 5 dollar bills (serial numbers: 01200980A, MG68369631A).[1]  Notes, records, ledgers, cell phones (including all electronically stored data stored within each cell phone and/or its memory cards, microchips or any data storage device contained within, including but not limited to: stored numbers called, stored calls received, address books, stored text messages, voice-mails, emails, internet addresses and/or any photo or digital images)

[1] Franklin Police Department had conducted a controlled buy at an earlier time.  The serial numbers of the money used in the buy were noted and then used here to support the contention Brown had distributed methamphetamine.  (*See* Ex. Vol. at 6-7 (Sergeant Povinelli's probable cause affidavit for search warrant wherein he reports the use of informants to purchase methamphetamine from Brown).)

and/or any indicia of possessing, producing, or distributing methamphetamine.

(Ex. Vol. at 3 (footnote added).)

[3] Brown arrived during the search and, pursuant to an arrest warrant, was taken into custody. Brown was handcuffed and placed in the back of a police car. Franklin Police Department Sergeant Anthony Povinelli read Brown his *Miranda* warning.[2] Brown indicated he understood and did not request an attorney. Brown told Sergeant Povinelli different locations in the house where contraband was located. As Brown revealed locations, officers would conduct a search. Each time, they found "personal use quantit[ies.]" (Tr. at 13.) Each time, before he revealed another location, Sergeant Povinelli read Brown his *Miranda* warning. Each time, Brown continued to give information.

[4] Finally, Brown advised Sergeant Povinelli to look in the safe located in his bedroom and provided the combination for the safe. Within the safe, officers found "a large amount of – a hundred and twenty, plus or minus, grams of methamphetamine, Nine [sic] thousand cash, seven hundred and forty dollars of that cash belonged to the Franklin Police Department, verified through serial

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966) (when taking citizens into custody, officers must advise them of their right to remain silent, their right to counsel during questioning, their right to appointment of counsel if one cannot be afforded, and their right to assert those rights at any time).

numbers, as well as a revolver firearm, and three rings with appraisals." (*Id.* at 14.)

[5] On April 28, 2016, the State charged Brown with Level 2 felony dealing in methamphetamine,[3] Level 6 felony possession of methamphetamine,[4] and Level 6 felony maintaining a common nuisance.[5] On October 16, 2017, Brown filed a motion to suppress the evidence found in the safe, alleging violations of the Fourth Amendment of the United States Constitution and Article 1, section 11 of the Indiana Constitution, along with violation of Article 1, section 13 of the Indiana Constitution for failing to provide Brown with a *Pirtle* advisement.[6] Brown argued the warrant was overly broad because, although it included a reference to "closed container," (Ex. Vol. at 3), the safe was a locked container and the officers should have obtained a second warrant to allow them to search inside or should have advised Brown of his *Pirtle* rights prior to opening the safe with the combination he provided.

[6] The trial court conducted a hearing and denied the motion on November 28, 2017. The trial court found the officers had a "valid search warrant for the defendant's residence to search for methamphetamine, accompanying

---

[3] Ind. Code § 35-48-4-1.1 (2014).

[4] Ind. Code § 35-48-4-6.1 (2014).

[5] Ind. Code § 35-48-4-13 (2014).

[6] In *Pirtle*, our Indiana Supreme Court held a consent to search obtained from a citizen in custody is invalid under Article 1, section 13 of the Indiana Constitution unless that person is informed of his right to counsel before consenting to a search. *Pirtle v. Indiana*, 323 N.E.2d 634, 640 (Ind. 1975).

paraphernalia and related items. The warrant extended to 'all buildings, structures, vehicles, fenced-in areas, and any other enclosed area and/or closed container anywhere on the premises contained within [ ] the curtilage of the described dwelling.'" (Appealed Order at 1.) The trial court reasoned the "safe was a reasonable place where methamphetamine and related items could be kept, and the search warrant was sufficient to authorize the officers to search the locked safe." (*Id.*) Further, the trial court concluded the "officers' inquiry, and defendant's willingness to provide the combination, does not convert the search based on a valid warrant to a search based on defendant's consent. No *Pirtle* advisement was required." (*Id.*)

[7] Brown requested the denial of his motion to suppress be certified for interlocutory appeal, and the trial court granted that request. We accepted jurisdiction over this interlocutory appeal.

# Discussion and Decision

[8] Brown appeals the trial court's denial of his motion to suppress the evidence found in a safe in his house. Our standard of review for the denial of a motion to suppress evidence is similar to that of other sufficiency issues. *Jackson v. State,* 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.* We determine whether there is substantial evidence of probative value to support denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. *Id.* The review of a denial of a motion to suppress is different from other sufficiency

matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State,* 885 N.E.2d 590, 596 (Ind. 2008).

[9] Brown contends the officers opened the safe "directly and proximately as a result of a *Pirtle* violation rather than on the authority of a warrant." (Br. of Appellant at 8 (formatting revised).) In *Pirtle*, our Indiana Supreme Court held a consent to search obtained from a citizen in custody is invalid under Article 1, section 13 of the Indiana Constitution unless that person is informed of his right to counsel before consenting to a search. *Pirtle v. Indiana*, 323 N.E.2d 634, 640 (Ind. 1975). When *Pirtle* advisements are required, the "person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given." *Jones v. State*, 655 N.E.2d 49, 54 (Ind. 1995), *reh'g denied*. *Miranda* warnings do not suffice. *Id*. Brown argues that because the officers used the combination he gave them to open the safe, he was entitled to a *Pirtle* advisement. We disagree.

[10] First, as a factual matter, the record does not support the trial court's finding that "officers asked the defendant, who was under arrest and in handcuffs, for the combination to the safe." (Appealed Order at 1.) Sergeant Povinelli testified, Brown "advised [him] of a safe that was in [Brown's] bedroom. And provided [him] with the combination to enter the safe." (Tr. at 14.) We found no evidence, however, that officers "asked" for the information. As the record

does not support the trial court's finding that officers requested the combination from Brown, we cannot rely on that finding. *See Perrine v. Marion Cty. Office of Child Servs.*, 866 N.E.2d 269, 277 (Ind. Ct. App. 2007) (when trial court's findings are unsupported by the evidence, conclusions based thereon are rejected).

[11] However, even assuming *arguendo* police asked Brown to provide the combination, we could not find merit in Brown's assertion that

> police deliberately elected to gain access without resort to any claimed authority of the warrant, but instead relied on non-warrant means (i.e. consent) which thereby and decisively initiated this *Pirtle* violation.

(Br. of Appellant at 12.) Indiana law requires officers conducting a search to provide citizens an opportunity to protect their property from destruction during the execution of a search warrant. Ind. Code § 35-33-5-7 (permitting police to "break open any outer or inner door or window in order to execute a search warrant, if the officer is not admitted following an announcement of the officer's authority and purpose"). As police officers must request entry to the home and any locked rooms therein prior to breaking down doors, it seems only logical that police ought also request access to a locked container prior to breaking it open. As the officers conducting the search of Brown's home were following an Indiana law intended to minimize destruction of citizen's property during a search authorized by warrant, we cannot infer therefrom that those officers stopped relying on the authority of a warrant.

[12]     Furthermore, a *Pirtle* advisement cannot be necessary when police have a search warrant because the *Pirtle* doctrine was intended to help citizens in custody preserve the very same constitutional protections that are preserved by the search warrant requirement:

> The *Pirtle* court also noted the many protections of one's right against unreasonable searches and seizures that are waived when one consents to a search requiring probable cause:
>
>> A search warrant may issue only upon probable cause supported by an affidavit particularly describing the place and property to be searched. Only a neutral magistrate may issue the warrant. It must include enough information to allow the magistrate himself to determine whether there is probable cause for a search. The information must be based on the officer's personal knowledge or on a credible tip from a reliable informer. *A person who consents to a search gives up all these protections and subjects himself to a general search without probable cause*.
>
> [*Pirtle*, 263 Ind.] at 26-27, 323 N.E.2d at 639 (emphasis added and citations omitted). "No one told [Pirtle] that if he refused consent, the officers would have to specify *what they were looking for and their reasons for believing appellant had those items in order to get a search warrant*." *Id*. at 28, 323 N.E.2d at 640 (emphasis added). The *Pirtle* court expressed understandable concern that a person in custody without benefit of counsel might waive numerous constitutional protections by consenting to a general, unlimited search.

*Ackerman v. State*, 774 N.E.2d 970, 980-81 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. However, those constitutional protections cannot be at risk when

police have already obtained a search warrant for the very location to which Brown asserts his consent was improper. Thus, the only question that remains is whether the search warrant obtained in this case provided police with authority to search Brown's safe.[7]

[13] Police in this case had a warrant to search

> any . . . closed container anywhere on the premises [for] Methamphetamine and any accompanying paraphernalia, . . . US Currency that could be evidence of dealing methamphetamine including but not limited to [certain denominations with certain serial numbers,] [n]otes, records, ledgers, cell phones . . . and/or any indicia of possessing, producing, or distributing methamphetamine.

(Appealed Order at 1.) Brown argues the search warrant's inclusion of authority to search any "closed container" does not include authority to open the safe because it was locked, not just closed. Brown argues the police needed a second search warrant to open and search inside the locked safe.

[14] In support of his argument that police needed a second search warrant, Brown points to inventory searches of cars, during which police may impound a vehicle but cannot search locked containers inside that vehicle without a warrant. He frames this argument as a difference between officers' rights to seize versus officers' rights to search. Brown is correct that under the Indiana

---

[7] On appeal, Brown does not challenge the validity of the search warrant under Article 1, section 11, or the Fourth Amendment, and we accordingly presume the warrant's constitutionality.

Constitution, Article 1, section 11, the needs of law enforcement do not allow a warrantless search of locked containers within the vehicle. *State v. Lucas*, 859 N.E.2d 1244, 1251 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. We have so held because an inventory search is an exception to the requirement for a search warrant, and the exception was created to protect private property, protect police from claims of missing property, and protect police from danger. *See, e.g., Gibson v. State*, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000) (denoting the rationale for inventory searches). Because of the decreased risk that items inside a locked container will be lost, police cannot intrude into the privacy of locked containers without obtaining a warrant supported by probable cause to search that container within a vehicle.[8]

[15] Here, though, officers already had a warrant to search Brown's house for drugs and cash. Generally speaking, "[a] search warrant authorizing the search of defined premises also authorizes the search of containers found on that premises which reasonably might conceal items listed in the warrant." *Green v. State*, 676 N.E.2d 755, 759 (Ind. Ct. App. 1996) (quoting *United States v. Johnson*, 709 F.2d 515, 516 (8th Cir. 1983)), *trans. denied*. Thus, the question

---

[8] Aside from Brown's reliance on *Pirtle*, he does not distinguish between the Federal and Indiana constitutional arguments. In support of his arguments, he commingles federal and Indiana cases. As Brown has not presented an argument based on a separate analysis of the Indiana Constitution, we need only address these claims using federal standards. *See Haley v. State*, 696 N.E.2d 98, 100 n.1 (Ind. Ct. App. 1998) (without a separate analysis, we analyze using federal standards), *trans. denied*; *see also State v. Azania*, 865 N.E.2d 994, 998 n.4 (Ind. 2007) (where party cites Indiana Constitution but presents no separate argument based thereon, we resolve the federal claim and "express no opinion" about the state claim), *clarified on reh'g* 875 N.E.2d 701 (Ind. 2007) ("clarifying which iteration of Indiana's death penalty statute applies to a new sentencing phase").

before us is whether the first warrant's authorization to open "containers" includes "locked containers."

[16] In *Green*, 676 N.E.2d 755, while investigating a charge of child exploitation, officers obtained a search warrant to search Green's photography studio and apartment for "'all film, photos, photographs, pictures, videos, movies, negatives, undeveloped film or any pictorial representation that depict or describe sexual conduct by a child' . . . ." *Id*. at 756. In his studio, officers found a locked safe. Green would not open it and claimed it belonged to his parents. Green's mother did not have the combination. Officers seized the safe and took it back to their station. Officers obtained a second warrant to search the safe. While they did not find any of the items listed in the search warrant, they found marijuana. The State charged Green with Class A misdemeanor possession of marijuana. When Green moved for the marijuana evidence to be suppressed, the trial court denied his motion.

[17] On appeal, a panel of this court noted it could not find any Indiana cases "which specifically involved the execution of a search warrant which resulted in the removal and subsequent search of a safe which was not specifically listed in the warrant." *Id*. at 758. Therefore, that panel looked to two federal cases as instructive: *United States v. Wright*, 704 F.2d 420 (8th Cir. 1983), and *United States v. Johnson*, 709 F.2d 515 (8th Cir. 1983). In both instances, the federal courts held the search of a safe, found pursuant to a valid search warrant that did not specifically list the safe as a place to be searched, was proper. Based thereon, the panel in *Green* held that, where the search warrant was valid and

the items sought could reasonably have been found in a safe, the officer's decision to get a "*second warrant to search the safe was not necessary* and was undoubtedly secured in an exercise of caution by police." *Green*, 676 N.E.2d at 759 (emphasis added). Thus, the panel held "the initial warrant to search Green's apartment and photography studio authorized the search of the safe." *Id*.

[18] As such, we cannot agree with Brown's unsupported assertion that a safe is not included in the search warrant's specification that officers are allowed to look in "closed container[s.]" (Appealed Order at 1.) In *Green*, without including a specific reference to closed containers, we held the search of a safe was authorized because the items to be searched for could reasonably be found in a safe. *Green*, 676 N.E.2d at 759. Although the officers in *Green* obtained a second warrant specifically for the safe, they were not required to do so—their authorization to open the safe stemmed from the original warrant. *Id*. Therefore, in this case, with even more particularity noted in the search warrant, we hold the officers had authorization to search the safe. *See id.*

[19] Because the officers had a valid warrant, they did not require Brown's consent to open the safe. *See Garcia-Torres*, 949 N.E.2d at 1237 (Ind. 2011) (consent to search obviates need for search warrant, but "the Fourth Amendment is satisfied when police obtain a warrant"). The fact that Brown may have offered the combination in order to preserve his safe from destruction does not invalidate the lawful warrant. *See United States v. Johnson*, 709 F.2d 515, 516 (8th Cir. 1983) ("Johnson refused to open the safe when it was first discovered

by the officers. Because they were authorized to open it under the warrant at that time, they did not need a second warrant to complete the search of the safe at the police station later."). We accordingly affirm the trial court's denial of Brown's motion to suppress the evidence found in his safe. *See Green*, 676 N.E.2d at 759.

# Conclusion

[20] As the officers' search warrant authorized opening the safe, Brown's consent was not necessary to open the safe. Brown's revelation to police of the combination to that safe could not invalidate the validity of the warrant or render the search one conducted only pursuant to his consent. Accordingly, the failure of officers to provide a *Pritle* advisement to Brown before he revealed the combination is irrelevant. Accordingly, the trial court did not abuse its discretion when it denied Brown's motion to suppress the evidence found in the safe. We affirm and remand for further proceedings.

[21] Affirmed and remanded.

Baker, J., and Robb, J., concur.