# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 7, 2012

Lyle W. Cayce
Clerk

No. 11-10902
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARK THOMAS ANTHONY,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-13-1

Before REAVLEY, JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Mark Thomas Anthony pleaded guilty to theft or receipt of stolen mail, but reserved his right to appeal the denial of his motion to suppress evidence. Anthony contends on appeal that he was "seized" within the meaning of the Fourth Amendment as soon as the officers parked their patrol unit perpendicular to his vehicle, thereby preventing him from leaving the scene and ordering him to stand in front of the police unit. He asserts that the officers were not merely asking questions, but had "clearly exercised their authority over

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[him] immediately upon their initial contact and he complied with their instructions." Anthony points to Officer Drummond's testimony that Anthony was not free to leave once he was directed to stand in front of the police unit. Anthony contends that, contrary to the district court's findings, the initial encounter between him and the officers constituted a *Terry*[1] stop.

When reviewing a denial of a motion to suppress evidence, this court reviews factual findings for clear error and the ultimate constitutionality of law enforcement action de novo. *United States v. Perez*, 484 F.3d 735, 739 (5th Cir. 2007) (citation omitted).

Officer Campbell approached Anthony in a public parking lot to ascertain his identity while Officer Drummond stayed in the patrol car checking the vehicle's registration. There was no testimony that the officers brandished their weapons or that Anthony was handcuffed prior to being placed under arrest. There was also no testimony that Anthony was advised that he could not leave the area. Anthony is correct that the officers parked their unit perpendicular to his vehicle. However, contrary to Anthony's assertions, Officer Drummond testified that the unit was parked several feet away from Anthony's and there was still room for Anthony to leave, as well as "room for vehicles to pass between [them]." Further, Officer Drummond's subjective intentions as to whether Anthony was free to leave once he was asked to stand in front of the police unit is not determinative of whether there was a seizure within the meaning of the Fourth Amendment. *See United States v. Mask,* 330 F.3d 330, 336 (5th Cir. 2003). Given the totality of the circumstances, the officers' conduct was not sufficiently coercive to transform the consensual encounter into a detention. *See United States v. Drayton,* 536 U.S. 194, 204-05 (2002); *see also United States v. Galberth*, 846 F.2d 983, 989 (5th Cir. 1988). Thus, the district court did not clearly err in finding that the initial encounter was not a seizure within the

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

Fourth Amendment.  *See United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002).

Nevertheless, even if the district court's finding was clearly erroneous, there was ample evidence in the record that the officers possessed reasonable suspicion sufficient to conduct an investigatory stop.  The area the officers were patrolling was known to be a high crime area, particularly with regard to the burglary of vehicles.  Anthony's behavior was suspicious in that he was lying with his feet outside the vehicle and working under the dashboard.  Also, the officers observed another person standing nearby the vehicle.  Anthony stresses the fact that he had been staying in the hotel for several months and compares the hotel to his residence.  However, at the time of the stop, it was unknown to the officers whether Anthony was staying in the hotel or a transient involved in the perpetration of a crime.  The particular and articulable facts, taken together with rational inferences from those facts, reasonably warranted the officers to conduct an investigatory stop.  *See United States v. Michelletti*, 13 F.3d at 838, 840 (5th Cir. 1994) (en banc).  Further, the actions taken by the officers were reasonable under the circumstances and related to dispelling their belief whether they were witnessing a burglary in progress.  *See United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).  As such, the district court did not err in finding that the stop of Anthony by the officers was valid under *Terry*.  *See id.* at 506.

Anthony challenges the district court's finding that his girlfriend, Ashley Engel, had actual or apparent authority to consent to the search of his property, particularly the blue tote bag, and the seizure of car keys found in the hotel room in which she was also found.  The hotel room was rented in Engel's name, she signed a consent form giving the officers permission to search the entire premises of the one-room hotel room, the blue tote bag was found in plain view on a shelving area that lacked doors, and there was no indication on the bag that it belonged to Anthony.  Based on these circumstances, it was not clearly

erroneous for the district court to find that Engel had actual or apparent authority to give consent to a search of the room, including the blue tote bag and keys. *See Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *United States v. Navarro*, 169 F.3d 228, 232 (5th Cir. 1999).

Finally, Anthony contends that, under the "fruit of the poisonous tree doctrine," evidence from the hotel room and statements he made to authorities should have been suppressed due to his unlawful detention and the illegal search of his vehicle. The Government contends that although proper, the officers' decision to impound and search Anthony's vehicle is irrelevant because Engel's voluntary consent to search the hotel room cures any taint of a prior Fourth Amendment violation.

Anthony does not contest the district court's finding that Engel's consent was voluntary. Consequently, we focus on whether the "consent was an independent act of free will;" in doing so we consider "1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the initial misconduct." *United States v. Jones,* 234 F.3d 234, 243  (5th Cir. 2000) (citation omitted).

Even if the was a prior Fourth Amendment violation, Anthony is not entitled to relief. Engel did not witness the arrest of Anthony nor the search of his vehicle. Engel was approached by two officers and voluntarily consented to the search of the hotel room in which she was found. Further, the district court adopted the Government's version of events which did not reflect any flagrant official misconduct. Thus, based on the evidence presented at the hearing, Engel's voluntary consent dissipated the taint of any alleged Fourth Amendment violation regarding the search and seizure of Anthony's truck. *See Jones*, 234 F.3d at 242; *United States v. Richard*, 994 F.2d 244, 252 (5th Cir. 1993). As such, his argument that evidence seized from the room should have been suppressed as fruit of the poisonous tree fails. Because there was no Fourth Amendment violation in connection with the seizure of the stolen mail,

No. 11-10902

Anthony's argument that the inculpatory statements he made with respect to the stolen mail should be suppressed as "fruits of the poisonous tree" also fails. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010). Accordingly, the judgment of the district court is AFFIRMED.