# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60041

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

RICKEY LEE SCOTT,

Defendant–Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

September 4, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CR-134

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's denial of Appellant Ricky Lee Scott's motion to suppress a pistol discovered on his person. Scott entered into a conditional plea agreement for possession of a firearm by a felon. The district court held that the weapon had been properly discovered pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). In addition to arguing that there was reasonable suspicion for the *Terry* stop, the Government contends that we need not reach

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60041

the *Terry* inquiry because the stop did not constitute a Fourth Amendment seizure. Because we find that Scott was not seized before the gun was discovered and therefore the officers did not act unlawfully, we affirm.

## I. BACKGROUND

Scott was indicted for being a felon in possession of a firearm. Scott filed a motion to suppress the revolver he was charged with carrying.[1] He argued that the revolver was recovered after a warrantless stop that was not supported by reasonable suspicion. The Government argued that Scott had not been seized when the gun was discovered and, in the alternative, the detective who recovered the revolver had grounds for reasonable suspicion that Scott was participating in illegal narcotics trafficking.

At the suppression hearing, the arresting detective, Corliss Harris, testified that on the day of Scott's arrest he had received from his sergeant an anonymous tip through the mayor's hotline. The tip advised that illegal drug activity and other illegal activities were occurring at 213 Columbus Street in Jackson, Mississippi. Detective Harris, who was patrolling the area with other officers in unmarked vehicles, went to Columbus Street and saw individuals standing in the street by a vehicle parked in front of 213 as well as "a gentleman . . . working on[] the rear of the vehicle." At this point, Detective Harris testified, there was "[n]othing suspicious" about the men.

Detective Harris testified that after he exited his vehicle and approached wearing his tactical police gear, Scott "beg[a]n to act kind of fidgety when he realized we were police[,] adjusting his [sic] self around his waistband and began to walk off. I at that time advised him he didn't have to leave, asked him to step back over." Scott then "raised his hands to state that he hadn't done

---

[1] Scott originally pleaded guilty, but this plea was vacated because he had not been properly informed of the mandatory minimum sentence.

2

No. 14-60041

anything," at which point Detective Harris was able to see "what appeared to be a butt of a handgun on the left waistband." After Detective Harris searched Scott and retrieved the firearm, Scott admitted that he was a convicted felon and was taken into custody.

Regarding the legality of the initial stop, Detective Harris testified that he never commanded Scott to stay or told Scott that he could not leave. Detective Harris said that that Scott voluntarily stopped and turned to engage in conversation. The Government submitted, as an exhibit, the arrest report that included Detective Harris's statement that Scott "began to act very nervous" when he was approached.

On cross-examination, Detective Harris testified that the anonymous tip specifically directed the officers to 213 Columbus Street and that it informed them that individuals would "hang out around vehicles waiting for people to come through in front of 213." Detective Harris admitted that when the officers initially stopped to investigate, the only suspicion he had was based on the presence of the individuals in the street in front of 213, which was consistent with the information he had received. He also testified that Scott had taken only two or three steps away from the scene when he turned and raised his hands. Detective Harris stated that Scott started to walk away only a few seconds after Detective Harris exited the car and that Scott raised his hands "not even a minute" later.

Following this hearing, the district court denied Scott's motion to suppress the gun. The court first stated that there was "a question whether or not there was a detention . . . [and] I think that in my mind there probably was a detention at the point when the officer asked the defendant to step back over." The court noted that the officers had received an anonymous tip that there was drug activity at the specific address and that the officers observed individuals congregating in the street consistent with the information in the

3

No. 14-60041

tip. The court concluded that based on the information in the tip, the observance of activity consistent with that information, Scott's nervous reaction to the police, and his attempt to walk away, reasonable suspicion existed to justify a *Terry* stop.

Scott then entered into a plea agreement wherein he reserved the right to appeal the district court's adverse ruling on his motion to suppress. The district court accepted Scott's guilty plea and imposed a sentence of 180 months of imprisonment. Scott filed a timely notice of appeal. Because it was unclear whether the district court held that Scott was seized, we remanded to the district court for clarification. On remand the district court found that prior to the discovery of the gun, a reasonable person would have felt free to leave, and held that "Scott was not seized until the gun had been observed."

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal of a final judgment pursuant to 28 U.S.C. § 1291. We review the district court's seizure determination for clear error. *United States v. Mask*, 330 F.3d 330, 334–35 (5th Cir. 2003). But, "a district court's seizure determination is not entitled to deference if it is influenced by an incorrect view of the law." *Id.* at 335.

We must "view the evidence in the light most favorable to the party prevailing below." *Id.* Thus, the denial of a motion to suppress will be upheld so long as there is "any reasonable view of the evidence to support it." *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (internal quotation marks omitted). This Court "may affirm the district court's decision on any basis established by the record." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (internal quotation marks omitted).

## III. DISCUSSION

The Government argues that we need not perform a *Terry* analysis because "Scott returned to the officer voluntarily, thus rendering his contact

4

with the police consensual." The Government acknowledges that Detective Harris asked Scott to come back but asserts that this alone does not constitute a seizure. We agree.

Not every law-enforcement encounter constitutes a seizure for Fourth amendment purposes. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "A voluntary encounter between an officer and a citizen may ripen into a seizure, triggering the Fourth Amendment and requiring officers to be able to articulate reasonable suspicion or probable cause, 'only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen.'" *Mask*, 330 F.3d at 334 (alteration in original) (quoting *Terry*, 392 U.S. at 19). An individual has been seized "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *INS v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotation marks omitted). This is an objective test "concerned not with the citizen's subjective perception or the officers' subjective intent, but only with what the officers' words and actions would have conveyed to a reasonable and innocent person." *Mask*, 330 F.3d at 336 (citing *Bostick*, 501 U.S. at 438; *Michigan v. Chesternut*, 486 U.S. 567, 574, 576 n.7 (1988)).

Viewing the facts in the light most favorable to the Government, we conclude that Scott had not been seized when the gun was discovered. The events leading up to the discovery of the gun are as follows: The officers arrived at the address in unmarked police cars. Detective Harris, upon seeing individuals in front of the address, exited his vehicle wearing his tactical gear marked "police" and approached. Scott started to walk away and Detective Harris "advised him he didn't have to leave[ and] asked him to step back over." Importantly, Detective Harris did not command Scott to return or tell him he could not leave. At this point, Scott turned around and raised his arms,

revealing the butt of the gun in his waistband.[2] *Id.* Less than a minute passed between Detective Harris's exit from the vehicle and the discovery of the weapon.

This Court has found that no seizure occurred even though an officer requested that the individual come to his location. *See United States v. Valdiosera–Godinez*, 932 F.2d 1093, 1099 (5th Cir. 1991).[3] In *Valdiosera–Godinez*, federal customs agents, investigating a tip, drove up to a storage unit and parked seven or eight feet from the entrance. *Id.* at 1094–95. One "announced . . . that he was a federal agent and asked if he could speak with the defendants." *Id.* at 1095. While he did this he "motioned them outside the unit." *Id.* at 1099. The agents then obtained the defendants' consent to search the unit and discovered cocaine inside. *Id.* at 1095. Before trial, one defendant unsuccessfully moved to suppress the fruits of the search, arguing his consent was invalid because it was obtained after a seizure not justified by reasonable suspicion. *Id.* at 1098. This Court affirmed on the ground that no seizure

---

[2] This testimony is inconsistent with Detective Harris's description in the arrest report:

> I asked Mr. Scott to stop and come over to me. He complied but was very reluctant to do so. For officer safety I asked the subject if he had anything on him that I as a law enforcement officer needed to know about. Mr. Scott replied no as he raised his hands. When his hands were raised I could see the butt of a small hand gun.

Were we not bound to view the facts in the light most favorable to the Government, these discrepancies would change our seizure analysis.

[3] *See also United States v. Falls*, 533 F. App'x 505, 508 (6th Cir. 2013) (per curiam) ("Officer Neumeyer's use of the words 'stop' and 'come here,' without any other evidence of coercion, did not convert the consensual encounter into a seizure."); *United States v. Smith*, 423 F.3d 25, 27, 31–32 (1st Cir. 2005) (holding that no seizure occurred where uniformed officers, after asking a man numerous questions from a police cruiser, exited the vehicle, approached the man, and asked for his name and identification); *United States v. Broomfield*, 417 F.3d 654, 655–57 (7th Cir. 2005) (holding that a man who was told by an officer to stop and remove his hands from his pockets was not seized).

occurred, noting that the agents had not displayed weapons, blocked the individual's exit, or otherwise behaved aggressively. *Id.* at 1099.

In this case, "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command." *United States v. Jackson*, 390 F.3d 393, 397–98 (5th Cir. 2004) (alteration in original) (quoting *United States v. Drayton*, 536 U.S. 194, 204 (2002)) (internal quotation marks omitted). The only action by Detective Harris that could be viewed as restraining Scott's liberty is his request that Scott "step back over." This request is similar to that of the customs agent in *Valdiosera–Godinez*, who motioned for the defendants to come out of the storage unit to speak to him. *See* 932 F.2d at 1099. What is more, Detective Harris's behavior was less coercive than the agent's in *Valdiosera–Godinez*; the interaction here was briefer and Detective Harris did not ask Scott to exit a private building to speak to him.

We therefore agree with the district court that Scott was not seized for Fourth Amendment purposes prior to the gun's discovery and affirm the denial of Scott's motion to suppress on this ground. *See Powell*, 732 F.3d at 369 ("[This Court] may affirm the district court's decision on any basis established by the record." (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the motion to suppress.