**OPINION**



FILED

Aug 24 2016, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Pinner, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 24, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1511-CR-2036 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Shatrese Flowers, Judge; <br> The Honorable Peggy Hart, Commissioner <br><br> Trial Court Cause No. <br> 49G20-1503-F5-8548 |

**May, Judge.**

[1] Thomas Pinner appeals the denial of his motion to suppress. As no reasonable suspicion justified the investigatory stop, we reverse.

# Facts and Procedural History

[2] On February 20, 2015, Indianapolis Metropolitan Police Department officers Jason Palmer and George Stewart responded to a call from a cab driver regarding a passenger who dropped a handgun when exiting the cab at the Studio Movie Grill. The cab driver described the passenger as "a black male wearing a blue jacket [accompanied by] a black female with blonde hair." (App. at 13.) The driver indicated he was fearful of being robbed. Officer Palmer talked to the cab driver on the phone before attempting to locate the man. The driver left the scene before the officers arrived and gave no indication that a robbery had been attempted.

[3] On entering the Studio Movie Grill, the officers saw a blonde-haired black woman walking away from Pinner, who matched the driver's description. Pinner was on a bench by himself inside the lobby of the theatre when the two officers walked up to him, stood in front of him, told him there was a report of a man with a gun, and asked if he had a gun on him. Pinner denied having a gun but was shuffling nervously and was hesitant to answer. Officer Palmer had Pinner stand. When Pinner stood up, Officer Palmer could see the butt of a gun in his front pocket. Officer Palmer secured the gun for police safety and detained Pinner. He learned Pinner did not have a license to carry a handgun and placed him under arrest.

[4] The State charged Pinner with Class A misdemeanor carrying a handgun without a license enhanced to Level 5 felony due to prior commission of a

felony.[1] Pinner filed a motion to suppress the evidence. The trial court held a hearing and then denied Pinner's motion. The trial court found, in accordance with the State's argument at the hearing, that the officers had reasonable suspicion to approach and question Pinner. Pinner filed a Petition to Certify an Order for Interlocutory Appeal, which the trial court granted. We accepted jurisdiction and now reverse.

# Discussion and Decision

[5] Our standard of review for the denial of a motion to suppress evidence is similar to that of other sufficiency issues. *Jackson v. State,* 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.* We determine whether there is substantial evidence of probative value to support denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. *Id.* But the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State,* 885 N.E.2d 590, 596 (Ind. 2008).

---

[1] Ind. Code § 35-47-2-1 (2014).

[6] The Fourth Amendment to the United States Constitution requires law enforcement officials to obtain a valid warrant before conducting searches or seizures. When police conduct a search without a warrant, the State has the burden of proving that the search falls within an exception to the warrant requirement. *Taylor v. State,* 842 N.E.2d 327, 330 (Ind. 2006). A police officer may briefly detain a person without a warrant if, based on articulable facts and reasonable inferences, the officer believes criminal activity "may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30 (1968).

[7] The interaction between Pinner and the officers was an investigatory stop for which the officers did not have reasonable suspicion Pinner had engaged in or was about to engage in criminal activity. Therefore, the Fourth Amendment required the gun be suppressed.[2]

### *Consensual Interaction or Investigatory Stop?*

[8] Before the trial court, the State conceded "[t]his case involves an investigatory stop," (App. at 39), and argued the officers had the reasonable suspicion required by *Terry* to approach Pinner. But on appeal, the State argues the officers' interaction with Pinner was consensual, and thus not subject to Fourth Amendment protections, until they saw the gun. This encounter was not consensual and Pinner was subjected to an investigatory stop.

---

[2] Pinner also asserts the seizure was contrary to Ind. Const., Art. 1, Section 11. However, as the seizure violated the Fourth Amendment, we need not address Pinner's other argument.

An encounter between an officer and a private citizen is consensual when the officer limits his approach to "a casual and brief inquiry and the individual remains free to leave." *Woodson v. State*, 960 N.E.2d 224, 227 (Ind. Ct. App. 2012). The test for whether an individual remains free to leave is "what a reasonable person, innocent of any crime, would have thought had he been in the citizens' shoes." *Crabtree v. State*, 762 N.E.2d 241, 245 (Ind. Ct. App. 2002).

Here, two armed and uniformed officers approached and questioned Pinner, who was sitting alone in a theatre lobby.[3] They did not make small talk or pass the time of day with him. The officers approached Pinner with an official purpose and asked questions for which the answers could have criminal implications. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (examples of circumstances that indicate a seizure include the "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). The two officers stood in front of Pinner – one to his right and one to his left – as he sat on a bench.[4] Though the officers asserted before the trial court that Pinner could have walked away, we do not believe any reasonable citizen would have felt free to disengage from the officers

---

[3] This is one fact that distinguishes the facts herein from those in *U.S. v. Scott*, 2015 WL 4506864 (S.D. Miss. July 24, 2015), *aff'd*, 624 F. App'x 850 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 869 (2016), on which the dissent relies. Scott was "standing around a car in a manner consistent with drug activity" in a high-crime area, (¶17 of Dissent), while Pinner was seated alone, presumably waiting for his female companion to return, and not acting in any manner consistent with illegal activity.

[4] This is the second fact that distinguishes Pinner's situation from *Scott*. Scott had room to walk away, *see Scott*, 2015 WL 4506864, at *1, but Pinner could exit the encounter with police only by standing and walking between the two officers who had already asked him a pointed question.

without answering their question. *See State v. Felker*, 819 N.E.2d 870, 875 (Ind. Ct. App. 2004) (Although not every interaction between police and citizens implicates the Fourth Amendment, when an "officer has, by means of physical force or show of authority, in some way restrained the liberty of a citizen," a seizure occurs. The reviewing court must take into consideration all the circumstances that surround the encounter.), *trans. denied*. The interaction was not consensual; it was an investigatory stop, commonly referred to as a *Terry* stop.

### *Reasonable Suspicion for Terry Stop?*

[11]   The trial court denied Pinner's Motion to Suppress Evidence on the ground there was reasonable suspicion to stop Pinner. Specifically, the trial court described the stop as a *Terry* stop throughout the Order and found "the initial detention amount[ed] to reasonable suspicion and therefore was reasonable." (App. at 45.)

[12]   On appeal, the State does not address reasonable suspicion. The State had the burden to demonstrate the interaction with Pinner was supported by reasonable suspicion and was a valid "exception to the general warrant requirement of the Fourth Amendment[.]" *Segar v. State*, 937 N.E.2d 917, 921 (Ind. Ct. App. 2010). As the State provides no argument, it has not met that burden on appeal.

[13]   Mere possession of a firearm, which is legal, cannot produce reasonable suspicion to justify a *Terry* stop. *See Malone v. State*, 882 N.E.2d 784 (Ind. Ct.

App. 2008) (evidence suppressed because possession of a handgun on a porch did not give officers sufficient evidence of criminal activity to justify stop), *reh'g denied*. The State has not directed us to a reason why the police believed when they stopped Pinner that his possession of the gun was illegal, nor has the State asserted any other criminal activity was "afoot." Accordingly, we are constrained to hold the stop of Pinner was not supported by reasonable suspicion. *See, e.g., id*.

# Conclusion

[14] As the officers did not have reasonable suspicion to stop Pinner and this was not a consensual encounter, the trial court abused its discretion when it denied his motion to suppress. As such, we reverse.

[15] Reversed.

Baker, J., concurs.

Brown, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Pinner, | Court of Appeals Case No. |
| *Appellant-Defendant*, | 49A02-1511-CR-2036 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff*. | |

**Brown, Judge, dissenting.**

[16]     I respectfully dissent from the majority's conclusion that the trial court abused its discretion when it denied Pinner's motion to suppress.  As this court has previously observed:

> There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause.  Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable

cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has [occurred] or is about to occur. The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated.

*Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009) (citations omitted).

Also, determining whether an encounter was consensual or involves some level of detention

"turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." [*Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003)] (citing *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L.Ed.2d 690 (1991)). The test is objective—not whether the particular citizen actually felt free to leave, but "whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628, 111 S. Ct. 1547 (citing *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L.Ed.2d 497 (1980)). Examples of facts and circumstances that might lead a reasonable person to believe that he or she was no longer free to leave could include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000) (citing *Mendenhall*, 446 U.S. at 554, 100 S. Ct. 1870), *trans. denied*.

*Clark v. State*, 994 N.E.2d 252, 261-262 (Ind. 2013).

[17] I believe that the encounter between Pinner and Officers Palmer and Stewart was consensual and that reasonable suspicion arose when the officers observed Pinner's gun immediately after he told the officers that he was not armed. Recently, the United States District Court for the Southern District of Mississippi addressed a similar scenario in *U.S. v. Scott*, 2015 WL 4506864 (S.D. Miss. July 24, 2015), *aff'd*, 624 F. App'x 850 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 869 (2016). In *Scott*, police received an anonymous tip that drugs were being sold at a specific address in a high-crime area, and upon arriving they observed a congregation standing around a car in a manner consistent with drug activity. *Scott*, 2015 WL 4506864, at *1. Detective Corliss Harris observed Scott "acting nervously and patting or adjusting his waistband before taking a few steps away," and he "told Scott that he did not have to leave and asked him to come back over." *Id.* Scott then "lifted his hands gesturing that he had done nothing wrong, thus revealing a .38 revolver tucked in his waistband," and he was arrested for carrying the handgun after having been previously convicted of at least one felony. *Id.* Scott entered a guilty plea, but in doing so reserved the issue of whether the court should have suppressed the handgun for appeal. *Id.*

[18] The Court examined the question of at what point in time Scott was seized under *Terry* and began by observing that, rather than commanding Scott to come back, Detective Harris "told Scott, 'You don't have to leave' before 'asking him to step back over.'" *Id.* at *2. The Court noted the following:

To begin, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). "Moreover, characterizing every street encounter between a citizen and the police as a 'seizure,' . . . would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The [United States Supreme] Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place [or] by asking him if he is willing to answer some questions." *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). Finally, "the fact that the officers' conduct 'could be somewhat intimidating' does not mean a seizure has occurred." *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1099 (5th Cir. 1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 575, 108 S. Ct. 1975, 100 L.Ed.2d 565 (1988))[, *reh'g denied*, *cert. denied*, 508 U.S., 113 S. Ct. 2369 (1993)].

*Id.*

[19]   The Court then applied the *Mendenhall* factors as discussed above in *Clark* and ruled that a seizure did not occur until the gun was discovered. *Id.* at *3. The Court noted that, although six or seven officers were present, arriving in undercover vehicles and dressed in tactical gear marked "police," none of them drew their weapons and only Detective Harris, who was the first to exit his vehicle, spoke to Scott before the gun was discovered. *Id.* It observed that "[n]one of the officers, through their speech, actions, or position relative to [Scott], ever prevented him from walking away." *Id.* (quoting *United States v.*

*Mask*, 330 F.3d 330, 338 (5th Cir. 2003), *reh'g denied, reh'g en banc denied*). The Court also found that Detective Harris "neither touched Scott nor physically impeded his movement in any way" and "did not tell Scott he could not leave," and it concluded "that neither Harris's language nor tone conveyed the need for compelled compliance." *Id.* (citing *Florida v. Rodriguez*, 469 U.S. 1, 5-6, 105 S. Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam) (recognizing that "[t]he initial contact between the officers and respondent, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest"); *United States v. Anthony*, 487 F. App'x 921, 922 (5th Cir. 2012) (per curiam) (finding no seizure when officers parked patrol unit perpendicular to the defendant's vehicle and ordered him "to stand in front of the police unit"); *United States v. Guevara*, 448 F. App'x 453, 456 (5th Cir. 2011) (finding no seizure when police motioned the defendant into a store and stating, "[W]e need to talk"), *cert. denied*, 132 S. Ct. 1728 (2012); *United States v. Simmons*, 918 F.2d 476, 479-480 (5th Cir. 1990) (holding that a reasonable person in the defendant's situation would not have believed his freedom was limited when agents approached him, identified themselves as law-enforcement officers, and requested to speak to him)). The Court ended its discussion by reiterating that the test for judging whether the person felt free to leave is objective, and it held that the encounter was consensual until the gun had been observed. *Id.* at *4.

[20] Similarly, in this case when Officers Palmer and Stewart approached Pinner, neither had their weapons drawn, instead approaching Pinner in a non-

threatening manner and asking Pinner the question of whether he was carrying a gun. The record does not indicate that "through their speech, actions, or position" relative to Pinner did the officers prevent Pinner from walking away. *See Mask*, 330 F.3d at 338. The record also indicates that neither officer touched Pinner or impeded his movement. At trial, the State asked Officer Palmer specifically if he asked or ordered Pinner to stand, and Officer Palmer responded that he "asked [Pinner] if he could stand up for [him]." Transcript at 9. It was at that point that the officers observed the gun in Pinner's pocket, and Officer Palmer then ordered Pinner to keep his hands up while he "recovered the gun for officer safety because [Pinner] had lied to [him] about not having the gun." *Id.* I would conclude that, similar to the circumstances in *Scott*, the interaction between the officers and Pinner was a consensual encounter until the officers observed the gun in Pinner's pocket after he lied about not having a gun.

[21] I would also find that admission of the gun into evidence does not run afoul of Article 1, Section 11 of the Indiana Constitution. The test under Article 1, Section 11 focuses not on "the defendant's reasonable expectation of privacy," as under the Fourth Amendment, but instead on "the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006), *adhered to on reh'g*, 848 N.E.2d 278 (Ind. 2006). "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion

the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[22] I would find that "the degree of concern, suspicion, or knowledge that a violation has occurred" was high given that the officers had received a description of a man and his companion, in which a cab driver expressed fear of being robbed by the man, that the officers observed Pinner and his companion who fit the description, that, when asked if he was carrying a gun Pinner shuffled nervously and was hesitant to answer before ultimately lying and saying that he did not have a gun, and that the officers promptly observed that, indeed, he did have a gun on his person. I would find that the degree of intrusion was especially low, given that one of the officers merely asked Pinner if he could stand up for him before observing the gun on his person. I would find that the extent of law enforcement needs was strong in securing the gun upon observing that Pinner was armed after acting nervous and stating that he was not armed. Thus, I would find that given the totality of the circumstances, the interaction between the officers and the confiscation of Pinner's gun did not violate Pinner's rights under Article 1, Section 11 of the Indiana Constitution.

[23] I believe that Pinner's motion to suppress was correctly denied and would affirm the trial court.