BROWN, Judge,
dissenting.
[16] I respectfully dissent from the majority’s conclusion that the trial court abused its discretion when it denied Pin- *279 ner’s motion to suppress. As this court has previously observed:
There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has [occurred] or is about to occur. The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated.
Powell v. State, 912 N.E.2d 853, 859 (Ind.Ct.App.2009) (citations omitted). Also, determining whether an encounter was consensual or involves some level of detention
“turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business.” [Finger v. State, 799 N.E.2d 528, 532 (Ind.2003) ] (citing California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). The test is objective—not whether the particular citizen actually felt free to leave, but “whether the officer’s words and actions would have conveyed that to a reasonable person.” Hodari D., 499 U.S. at 628, 111 S.Ct. 1547 (citing United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Examples of facts and circumstances that might lead a reasonable person to believe that he or she was no longer free to leave could include “the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.” Overstreet v. State, 724 N.E.2d 661, 664 (Ind.Ct.App.2000) (citing Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870), trans. denied.
Clark v. State, 994 N.E.2d 252, 261-262 (Ind.2013).
. [17] I believe that the encounter between Pinner and Officers Palmer and Stewart was consensual and that reasonable suspicion arose when the officers observed Pinner’s gun immediately after he told the officers that he was not armed. Recently, the United States District Court for the Southern District of Mississippi addressed a similar scenario in U.S. v. Scott, 2015 WL 4506864 (S.D.Miss. July 24, 2015), aff'd, 624 Fed.Appx. 850 (5th Cir.2015), cert. denied, — U.S. —, 136 S.Ct. 869, 193 L.Ed.2d 767 (2016). In Scott, police received an anonymous tip that drugs were being sold at a specific address in a high-crime area, and upon arriving they observed a congregation standing around a car in a manner consistent with drug activity. Scott, 2015 WL 4506864, at *1. Detective Corliss Harris observed Scott “acting nervously and patting or adjusting his waistband before taking a few steps away,” and he “told Scott that he did not have to leave and asked him to come back over.” Id. Scott then “lifted his hands gesturing that he had done nothing wrong, thus revealing a .38 revolver tucked in his waistband,” and he was arrested for carrying the handgun after having been previously convicted of at least one felony. Id. Scott entered a guilty plea, but in doing so reserved the issue of whether the court should have suppressed the handgun for appeal. Id.
*280 [18] The Court examined the question of at what point in time Scott was seized under Terry and began by observing that, rather than commanding Scott to come back, Detective Harris “told Scott, “You don’t havé to leave’ before ‘asking him' to step back over.’” Id. at *2. The Court noted the following:
To bégih, “not all personal intercourse between policemen and citizens involves ‘seizures’ of persons.” Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “Moreover, characterizing every street encounter between a citizen and the police as a ‘seizure,’ ... would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.' The [United States Supreme] Court has on other occasions referred to the acknowledged need for police' questioning as a tool in the effective enforcement of the criminal laws.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, “law enforcement officers do not violate the Fourth Amendment by merely approaching ah individual on the street or in another public place [or] by asking him if he is willing to answer Some questions.” Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). Finally, “the fact that the officers’ conduct ‘could be somewhat intimidating’ does not mean a seizure has occurred.” United States v. Valdiosera-Godinez, 932 F.2d 1093, 1099 (5th Cir.1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 575, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988))[, reh’g denied, cert. denied, 508 U.S. [921], 113 S.Ct. 2369 [124 L.Ed.2d 275] (1993)].

Id.

[19] The Court then applied the Men-denhall factors as discussed above in Clark and ruled that a seizure did not occur until the gun was discovered. Id. at *3. The Court noted that, although six or seven officers were present, arriving in undercover vehicles and dressed in tactical gear marked “police,” none of them drew their weapons and only Detective Harris, who was the first to exit his vehicle, spoke to Scott before the gun was discovered. Id. It observed that “[n]one of the officers, through their speech, actions, or position relative to [Scott], ever prevented him from walking away.” Id. (quoting United States v. Mask, 330 F.3d 330, 338 (5th Cir.2003), reh’g denied, reh’g en banc denied ). The Court also found that Detective Harris “neither touched Scott nor physically impeded his movement in any way” and “did not tell Scott he could not leave,” and it concluded “that neither Harris’s language nor tone conveyed the need for compelled compliance.” Id. (citing Florida v. Rodriguez, 469 U.S. 1, 5-6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam) (recognizing that “[t]he initial contact between the officers and respondent, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest”); United States v. Anthony, 487 Fed.Appx. 921, 922 (5th Cir.2012) (per curiam) (finding no seizure when officers parked patrol unit perpendicular to the defendant’s vehicle and ordered him “to stand in front of the police unit”); United States v. Guevara, 448 Fed.Appx. 453, 456 (5th Cir.2011) (finding no seizure when police motioned the defendant into a store and stating, “[W]e need to talk”), cert. denied, — U.S. —, 132 S.Ct. 1728, 182 L.Ed.2d 264 (2012); United States v. Simmons, 918 F.2d 476, 479-480 (5th Cir.1990) (holding that a reasonable person in the defendant’s situation would not have believed his freedom was limited when agents approached him, identified themselves as law-enforcement officers, and requested to speak to *281 him)). The Court ended its discussion by reiterating-that the test for judging whether the person-felt free to leave is objective, and it held that the encounter was consensual until the gun had been observed. Id. at *4.
[20] Similarly, in this case when Officers Palmer and Stewart approached Pinner, neither had their weapons drawn, instead approaching Pinner in a nonthreatening manner and asking Pinner the question of whether he was carrying a gun. The record does not indicate that “through their speech, actions, or position” relative to Pinner did the officers prevent Pinner from walking away. See Mask, 330 F.3d at 338. The record also indicates that neither officer touched Pin-ner or impeded his movement. At trial, the State asked Officer Palmer specifically if he asked or ordered Pinner to stand, and Officer Palmer responded that he “asked [Pinner] if he could stand up for [him].” Transcript at 9. It was at that point that the officers observed the gun in Pinner’s pocket, and Officer Palmer then ordered Pinner to keep his hands up while he “recovered the gun for officer safety because [Pinner] had lied to [him] about not having the gun.” Id. I would conclude that, similar to the circumstances in Scott, the interaction between the officers and Pinner was a consensual encounter until the officers observed the gun in Pinner’s pocket after he lied about not having a gun.
[21] I would also find that admission of the gun into evidence does not run afoul of Article 1, Section 11 of the Indiana Constitution. The test under Article 1, Section 11 focuses not on “the defendant’s reasonable expectation of privacy,” as under the Fourth Amendment, but instead on “the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances.” Trimble v. State, 842 N.E.2d 798, 803 (Ind.2006), adhered to on reh’g, 848 N.E.2d 278 (Ind.2006). “We will consider the following factors in assessing reasonableness: T) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen’s ordinary activities, and 3) the extent of law enforcement needs,’ ” Id. (quoting Litchfield v. State, 824 N.E.2d 356, 361 (Ind.2005)).
[22] I would find that “the degree of concern, suspicion; or knowledge that a violation has- occurred” was high given that the officers had received a description of a man and his companion, in which a cab driver expressed fear of being robbed by the man, that the officers observed Pinner and his companion who fit the description, that, when asked if he was carrying a gun Pinner shuffled nervously and was hesitant to answer before ultimately lying and saying that he did not have a gun, and that the officers promptly observed that, indeed, he did have a gun on his person. I would find that the degree of intrusion was especially low, given that one of the officers merely asked Pinner if he could stand up for him before observing the gun on his person. I would find that the extent of law enforcement needs was strong in securing the gun upon observing that Pinner was armed after acting nervous and stating that he was not armed. Thus, I would find that given the totality of the circumstances, the interaction between the officers and the confiscation of Pinner’s gun did not violate Pinner’s rights under Article 1, Section 11 of the Indiana Constitution.
[23] I believe that Pinner’s motion to suppress was correctly denied and would affirm the trial court.